IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| SHANNON R. BENNETT, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>WILSON SENIOR CARE, INC., )<br>)<br>    Defendant. )<br>_____) | Civil Action No.: 4:17-CV-02798-RBH<br><br><br><br>**ORDER** |

Plaintiff Shannon Bennett filed this action on October 16, 2017, seeking damages based on violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), which included discrimination on the basis of sex and sexual orientation, retaliation and wrongful termination. On September 18, 2018, this Court issued an order dismissing Plaintiff Shannon Bennett's Title VII claims for discrimination based on sexual orientation, wrongful discharge, and to the extent her Complaint could be construed to include such a claim, this Court dismissed any potential hostile work environment claim. [ECF No. 17]. Currently pending before the Court is Defendant Wilson Senior Care, Inc.'s Motion for Summary Judgment. [ECF No. 30]. Wilson Senior Care seeks summary judgment as to the remaining claims asserted by Bennett, that is her sex discrimination claim and retaliation claim. Bennett filed a response to this Motion on May 28, 2019. [ECF No. 32]. On June 3, 2019, Wilson Senior Care filed its reply. [ECF No. 34]. In accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this matter was referred to a Magistrate Judge for pretrial handling. This matter is now before the Court after issuance of the Report and Recommendation ("R&R") of United States

Magistrate Judge Thomas E. Rogers, III. [ECF No. 41]. In the R&R, the Magistrate Judge recommends granting Defendant's Motion for Summary Judgment. Both Bennett and Wilson Senior Care filed objections to the R&R. [ECF No. 42; 44]. There are also two other pending motions: (1) a Motion for Discovery filed on April 16, 2019; and (2) a Joint Motion to Stay All Pending Pretrial Deadlines filed on June 20, 2019. [ECF No. 29; ECF No. 35]. This Court has thoroughly reviewed all pleadings and legal arguments presented by both parties, and now issues the following Order.

## **Factual Background and Procedural History**

As alleged within the Complaint, Bennett is a homosexual female who was employed with Defendant for approximately three (3) months, from July 14, 2014 until October 10, 2014. [ECF No. 1, p. 2]. Bennett acknowledges that her employment with Wilson Senior Care ended after the CEO, Dennis Lofe, terminated her employment during a ninety day probationary period because she was not a "good fit." Bennett's employment was subject to a policy requiring a probationary period of ninety (90) days to allow the employer the time to evaluate an employee's performance. [ECF No. 30-5]. According to Dennis Lofe in 2013, Wilson Senior Care, a facility heavily regulated by the South Carolina Department of Health and Environmental Control, received an Immediate Jeopardy designation ("IJ") status after an inspection and/or audit which required immediate action to correct several deficiencies at the facility. [ECF No. 30-2, Aff. of Dennis Lofe, ¶ 8]. In order to remedy these problems, Dennis Lofe determined that he needed to quickly fill two key positions, one of which was The Director of Nursing ("DON") at the Medford Facility. [ECF No. 30-2, Aff. of Dennis Lofe, ¶ 10]. He decided to hire Bennett for the DON

2

position based on her work experience. [ECF #30-2, Aff. of Dennis Lofe, ¶ 10]. Thus, at the request of Dennis Lofe, Bennett left her former employment and began working as the Director of Nursing at Wilson Senior Care on July 14, 2014.

Soon after beginning her employment with Wilson Senior Care, Bennett began hearing negative comments about her lifestyle and choice of dress, that she was being watched on security cameras by Tyler Lofe,[1] the Executive Director, and that upper management began plundering in her office. Bennett complained to both Tyler Lofe and Lula Wallace, who Bennett identified as the Human Resources Director, about the unequal scrutiny and the dislike Tyler Lofe had toward her. Bennett believes her termination was the result of Tyler Lofe's opposition toward her only. In her discovery responses, Bennett states that her retaliation claims is based on a reaction to her complaints wherein she discussed her concern about Tyler's Lofe behavior regarding her lifestyle with both Tyler Lofe and Lula Wallace. [ECF No. 30-12, p. 2-3]. Bennett states that she spoke directly to Tyler Lofe about what she felt was tension between the two of them, as well as that he was acting differently toward her. [ECF No. 30-15, Bennett Dep. 145:10-22]. She also stated that she spoke to Lula Wallace several times about his treatment toward her, as well as comments she heard about her lifestyle. [ECF No. 30-15, Bennett Dep. 70, 146]. Within her discovery responses Bennett admits that she did not identify any male employees that were treated differently than her, and she did not identify any complaints she made directly to Wilson Senior Care about any alleged discriminatory treatment, other than the conversations previously outlined above. [ECF

---

[1] Within her EEOC questionnaire, Bennett states that Tyler Lofe is the son of Dennis Lofe. This does not appear to be in dispute.

3

No. 30-13]. Tyler Lofe denies having a conversation with Bennett regarding him watching her on video cameras and denies having any conversation about who Bennett was in a relationship with at any time. [ECF No. 33-7, Tyler Lofe Dep. 27-28; 42:4-13].

After Bennett's termination from Wilson Senior Care, she filed a SC Human Affairs Charge of Discrimination, as well as a complaint of discrimination with the EEOC, alleging discrimination based on sex and retaliation. [ECF No. 30-7]. Within her questionnaire, she stated that Tyler Lofe, was given information about her lifestyle (sexuality), and that he did not approve of her for this reason. [ECF No. 33-1, p. 4]. Bennett was surprised by her termination and does not believe her termination was related to her job performance. [ECF No. 33-1, pp. 5-6]. The South Carolina Department of Employment and Workforce determined she was eligible for unemployment benefits. The decision indicated no evidence of improper actions connected with Bennett's work. [ECF No. 33-4]. The EEOC made a determination finding that her supervisor recommended discharge based on her sexual orientation. [ECF No. 33-6, p. 1].

Wilson Senior Care denies wrongdoing and contends that Bennett was terminated because she was not meeting her legitimate job expectations. In an affidavit provided by Dennis Lofe, he explained that early into her employment, he learned that Bennett was not preparing for meetings, not accessing nursing notes in accordance with her position, not providing the appropriate presence within the facility, and taking what he deemed to be extended breaks from the facility. [ECF No. 30-2, Aff. of Dennis Lofe, ¶¶ 12-14]. He prepared what he termed a "memo," which outlined his concerns and addressed ways for Bennett to improve. [ECF No. 30-2, Aff. of Dennis Lofe, ¶ 15]. Wilson Senior Care attached this "memo," dated August 13, 2014 (approximately a month into

4

Bennett's employment) which outlines "keys to success" in the Director of Nursing position. [ECF No. 30-10]. Dennis Lofe and Tyler Lofe met with Bennett in his office, he provided the memo to Bennett, and he discussed the contents of the memo with her. [ECF #30-2, Aff. of Dennis Lofe, ¶ 15]. Dennis Lofe states he continued to monitor Bennett's performance, and, after not seeing any improvement, terminated her employment within the probationary period. [ECF No. 30-2, Aff. of Dennis Lofe, ¶ 18]. Dennis Lofe avers that he make the decision alone to terminate Bennett, and on the same day he terminated her employment, he transferred another female to her position. [ECF No. 30-2, Aff. of Dennis Lofe, ¶¶ 15; 20]. With respect to the decision to terminate her employment, Bennett agrees that Dennis Lofe terminated her employment. She further stated that while both Tyler Lofe and Lula Wallace were in the room at the time, neither of them spoke. [ECF No. 33-1, p. 5].

Chrystal Hayes, the Clinical Effectiveness Coordinator for Wilson Senior Care, also provided an affidavit in support of Wilson Senior Care's Motion, stating that it was apparent to her that Bennett was not progressing in her position. [ECF No. 30-4, Aff. of Chrystal Hayes, ¶ 8]. Ms. Hayes explained that Dennis Lofe asked her to assist him in monitoring Bennett's progress after he reviewed the memo with Bennett. [ECF No. 30-4, Aff. of Chrystal Hayes, ¶ 11]. Sonya Foster, the Chief Clinical Officer, also provided an affidavit in support of Wilson Senior Care's Motion for Summary Judgment. Within her affidavit, she echoed the same concerns as Dennis Lofe and Chrystal Hayes regarding deficiencies in Bennett's job performance. [ECF No. 30-3, Aff. of Sonya Foster, ¶ ¶ 12-16]. She added that she personally assumed the role of oversight and training of Bennett's use of the computer system at Wilson Senior Care and determined that

5

Bennett chose not to use the computer system in the proper way. [ECF No. 30-3, Aff. of Sonya Foster, ¶ 16]. Ms. Foster stated that she continued to discuss her observations and concerns with Dennis Lofe throughout this probationary period. [ECF No. 30-3, Aff. of Sonya Foster, ¶ ¶ 18].

After reviewing the pleadings in this case, the Magistrate Judge recommends granting summary judgment with respect to Bennett's remaining claims. Bennett provides two objections to this recommendation: (1) that the Magistrate Judge's findings seem to weigh the evidence and make findings of fact with respect to her gender discrimination and retaliation claim; and (2) she has provided sufficient evidence to create a jury question. Wilson Senior Care objects to the portion of the Magistrate Judge's finding wherein he concluded that Bennett properly exhausted her administrative remedies.

## **Standard of Review**

### I. Review of the Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The district court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not

conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## II. Standard for Summary Judgment

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see also* Fed R. Civ. P. 56(a). Under Federal Rule of Civil Procedure 56, the moving party has the burden of proving that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23(1986) (the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party makes the showing, however, the opposing party must "go beyond the pleadings" to designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. A genuine issue of material fact is one that "might affect the outcome of the suit," and exists if, in viewing the record and all reasonable inferences in a light most favorable to the non-moving party, a reasonable fact-finder could decide in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which a fact finder

7

found reasonably find for it. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In ruling on a motion for summary judgment, the Court may not resolve factual disputes or weigh the evidence. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995).

### Discussion

**I. Exhaustion of Administrative Remedies**

Wilson Senior Care first argues that Bennett's claims are procedurally barred because she failed to exhaust her administrative remedies. The basis for this argument is that her sex discrimination claim was not a part of administrative charge with the EEOC or with the subsequent investigation. In the R&R, the Magistrate Judge rejected this argument and explained that within Plaintiff's charge, she checked the box indicating discrimination based on both sex and retaliation. She also used the word "sex" within the narrative portion of her charge and indicated that she believed she was discriminated on the basis of her sex, as well as her sexual orientation. Further, the Magistrate Judge noted that this argument was previously rejected in an earlier R&R with respect to a previous Motion to Dismiss. Wilson Senior Care did not raise an objection to this recommendation.

8

Prior to filing a lawsuit pursuant to Title VII, a plaintiff must exhaust his or her administrative remedies by bringing a charge with the EEOC. *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir. 1999). When a plaintiff's claims exceed the scope of the EEOC charge or any charges that would naturally have arisen from an investigation of those claims, they are procedurally barred. *Dennis v. County of Fairfax*, 55 F.3d 151, 156-57 (4th Cir. 1995). EEOC charges are often not completed by lawyers and should therefore be construed with utmost liberality. *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013). Previously analyzed by the Magistrate Judge was whether Bennett properly exhausted her administrative remedies. He concluded that while Bennett did not include a detailed narrative of her claims, she did check the boxes for both discrimination based on retaliation and sex, and a reasonable investigation would have included an investigation into those claims. This Court conducted a review of the Magistrate Judge's analysis in a previous order and found no clear error in that finding. Yet again, on summary judgment, Wilson Senior Care argues that Bennett was required to do more than simply "check the boxes" for both sex and retaliation in order to exhaust those claims. In response, Bennett contends that not only did she check both boxes to indicate she was alleging these two types of discrimination claims but also explains that in description under the charge particulars, she indicated she was discriminated against on the basis of both her sex and her sexual orientation, as well as that she was terminated for not being a good fit. [ECF No. 30-7]. In *Sloop,* the Fourth Circuit found that a claimant failed to make a retaliation claim because she did not claim she was retaliated against and because she did not check the box next to the retaliation classification. 198 F.3d at 149. However, unlike *Sloop*, Bennett checked the box

corresponding with retaliation, and alleged that though she was discharged because she was "not a good fit," she believed that was not the reason for her discharge. She further indicated within the questionnaire that one of the individuals in the room when she was terminated was someone she felt did not like her. In keeping the mind the liberal standard applied to these cases, this Court has reviewed the R&R, as well as the arguments made by Wilson Senior Care and Bennett regarding administrative exhaustion of remedies. This Court agrees with the Magistrate Judge's reasoning and finds that in this case, Bennett properly exhausted her administrative remedies as to these claims. Therefore, summary judgment is not appropriate based on a failure to exhaust claim.

**II. Title VII Sex Discrimination Claim**

The Magistrate Judge recommends finding that Bennett has not established a prima facie case of discrimination based on sex discrimination. Within the R&R, the Magistrate Judge asserts that Bennett continues to allege that the discriminatory treatment she experienced and subsequent termination were a result of Tyler Lofe's opposition to her sexual orientation or sexual preference. For example, Bennett argues in her response brief that her discrimination claim is that "her sexual orientation caused her to receive negative treatment from her direct supervisor Tyler Lofe who then informed the final decisionmaker Dennis Lofe that Plaintiff was not performing well." [ECF No. 32, p. 4]. Bennett further argues that she began hearing negative comments made by unknown employees about her lifestyle, that two individuals from upper management plundered her office,

Tyler Lofe watched her on cameras, and he did not like her style of dress. [ECF No. 32, p. 4].[2] Bennett argues that males have not been subjected to the same scrutiny because of their "sexual preference." [ECF No. 32, p. 4]. Bennett further states that she believes her termination was a result of her raising opposition to Mr. Lofe's behavior towards her "only." [ECF No. 32, p. 4]. In other words, Bennett's discrimination claim is based on her belief that she was discriminated against based on her sexual orientation and not because she was a female. However, Bennett's claim for relief based on her sexual orientation has already been dismissed as not cognizable under Title VII in a previous order, and this Court will not reconsider that claim here.

Nonetheless, this Court has analyzed whether Bennett establishes a cognizable Title VII discrimination claim based upon sex discrimination. In her objections, Bennett argues that the Magistrate Judge improperly weighed the evidence regarding her discrimination claim. She argues that while there seems to be a finding that she was not performing satisfactorily, she has created an issue of fact because she has alleged she had no prior knowledge of her disciplinary issues. She further alleges that because she did not have benefits coverage, there is circumstantial evidence that her separation was contemplated.[3] Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against an individual with respect to his or her compensation, terms, conditions, or privileges, of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-

---

[2] Bennett does not provide evidence that Tyler Lofe had any impact on Dennis Lofe's decision to terminate Bennett beyond her own assertions.

[3] Bennett appears to have been aware of the ninety (90) day probationary period set forth in the probationary policy.

11

2(a)(1). A plaintiff may provide either direct or circumstantial evidence of discrimination. In the absence of any direct evidence of discrimination, courts apply the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] Under the burden-shifting scheme announced in *McDonnell Douglas*, a plaintiff must first prove a prima facie case of discrimination. *Evans v. Tech. Apps. & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). If successful, then the defendant employer must present a legitimate, non-discriminatory reason for its employment action. *Id.* If the employer meets this burden, the presumption of unlawful discrimination created by the prima facie case of discrimination drops out of the picture, and the burden shifts back to the employee to show the reason given by his or her employer was pretextual. *Id.* Ultimately, the plaintiff bears the burden of proving the employer intentionally discriminated against her. *Id.* In Title VII cases, a prima facie case of discrimination, used in the pretext framework, is not sufficient to allow a plaintiff to avoid summary judgment except in such cases where an employer is silent in the face of the presumption raised by a plaintiff. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

To establish a prima facie case of discrimination, a plaintiff must prove by a preponderance of the evidence that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she met her employer's legitimate job expectations at the time of the adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimnation. *Adams v. Trustees of the Univ. of N.C.-*

---

[4] In order to establish a cause of action under Title VII, a plaintiff may either provide direct evidence or evidence sufficient to satisfy the burden-shifting scheme under *McDonnell Douglas*.

12

*Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011); *see generally Miles v. Dell Inc.*, 429 F.3d 480, 485 (4th Cir. 2005). Wilson Senior Care does not dispute that Bennett was a member of a protected class, and that she suffered an adverse employment action. Instead, Wilson Senior Care argues that Bennett is unable to establish either the third or fourth element of her claim for discrimination, and therefore summary judgment is appropriate.

Wilson Senior Care argues that Bennett has failed to establish she met her legitimate job expectations or that her termination occurred under circumstances giving rise to an inference of unlawful discrimination. In order to establish that she was performing satisfactorily, Bennett argues that she did not receive any disciplinary action while employed by Wilson Senior Care, and she was unaware of any alleged job performance issues until she was terminated. Bennett provides her EEOC and SCDEW documents, which are a recitation of her complaints against Wilson Senior Care as evidentiary support that she was performing satisfactorily in her position.[5] These complaints again include the fact that she was hearing negative comments about her lifestyle, her office was plundered, she was being watched on camera while other male employees were not being watched, and that upper management took issue with her style of dress. However, it is Bennett's stated belief that her termination was a result of Tyler Lofe's oppositional behavior toward her, rather than having anything to do with her job performance. However, even assuming

---

[5] Rule 56 requires that a party asserting a fact must support the assertion with evidence such as depositions, documents, electronically stored information, affidavits or declarations, admissions, interrogatory answers, and the like. Fed. R. Civ. P. 56(c)(1). Here, Bennett has provided her EEOC questionnaire and her EEOC intake notes and questionnaire to support her claims that she was discriminated against based on sex. This Court notes that the only evidence she brings forward that her job performance was satisfactory comes from her own testimony.

13

that Bennett has met her initial burden, Wilson Senior Care has presented a legitimate, non-discriminatory reason for its employment action.

Wilson Senior Care provides the affidavit of three individuals: the Chief Executive Officer, the Chief Clinical Officer, and the Clinical Effectiveness Coordinator to etablish that Bennett: (1) failed to review nursing notes prior to meetings; (2) was unnecessarily absent from her job location; (3) engaged in inappropriate delegation of duties to unit managers; and (4) was not continuously present within her own unit. These individuals further testified to the fact that they attempted to provide Bennett with support and feedback regarding her performance within the first few weeks of her employment, including providing her a memo with recommendations for improvement, as well as a list of resources. All three individuals stated that Bennett's performance never improved, and Dennis Lofe then made the sole decision to terminate Bennett's employment. Wilson Senior Care has therefore met its burden of proving there was a legitimate, non-discriminatory reason for terminating Bennett by rebutting her allegation that her job performance was satisfactory. The burden thus shifts back to Bennett to establish that reason offered by Wilson Senior Care for her termination is pretext.

In response, Bennett does not comes forward with any evidence to show that this reason was pretext for discriminating against her on the basis of being female. While Bennett states that Wilson Senior Care has failed to come forward with documents indicating her poor performance. This Court disagrees that in this case, Wilson Senior Care's affidavits from several other employees who were tasked with training Bennett are not sufficient to support its claim regarding her job performance. Second, while Bennett claims that she was terminated without notice, she

does not directly dispute the claims set forth in the affidavits of Mr. Dennis Lofe, Ms. Hayes, and Ms. Foster. Beyond Bennett's own allegations that her job performance was satisfactory, the only other evidence she brings forward is documentation from the EEOC stating that Wilson Senior Care's reason for termination was not supported by evidence and the decision by SCEW to award her unenmployment benefits. However, this determination alone does not compel this Court to make a finding of discrimination on the part of Wilson Senior Care. *See Laber v. Harvey*, 438 F.3d 404, 420 (4th Cir. 2006) (explaining that private-sector employees have the right to a *de novo* consideration of their employment discrimination claims without requiring the district courts to give deference to a finding by the EEOC of no reasonable cause). Additionally, the EEOC's decision is based on Bennett's complaints of discrimination based on sexual orientation, which has previously been dismissed by this Court. Bennett does not otherwise rebut the affidavits with sufficient evidence showing that the reasons given by these individuals were pretextual.

Further, Bennett has also failed to show that the decision to terminate her was pursuant to circumstances giving rise to an inference of unlawful discrimination. As set forth in the R&R, Bennett has not come forward with sufficient evidence that males were treated differently than females. Bennett argues she is unable to come forward with any comparator evidence because there are no male directors of nursing at Wilson Senior Care, thus she cannot develop evidence to suugest males who are similarly situated are treated differently. The fact that there are no male directors of nursing at Wilson Senior Care tends to negate Bennett's argument that she was the subject of sex discrimination. Further, while she states other male employees had performance issues but were not fired, she is unable to provide concrete details regarding those employees such

15

as their job requirements, what the specific issues were, whether they were discharged during their probationary period, for example. Thus, while Bennett does state that there were two other males employees who she believed received more favorable treatment than she did, she does not come forward with facts sufficient to show they were similarly situated or otherwise establish this fact beyond her own allegation. Finally, as pointed out by Dennis Lofe, and undisputed by Bennett, upon her termination, she was replaced by another female employee.

This Court has reviewed Bennett's responses in detail and construed all evidence in a manner favorable to her allegations. However, this Court agrees with the Magistrate Judge that Bennett has failed to establish a Title VII sex discrimination claim, either by presenting facts that she was treated differently than males or by refuting Wilson Senior Care's evidence that she was terminated for poor job performance. Therefore, summary judgment is appropriate as to her sex discrimination claim.

**III. Title VII Retaliation Claim**

Wilson Senior Care also argues that summary judgment is appropriate as to Bennett's retaliation claim because she fails to show she engaged in protected activity. Further, Wilson Senior Care argues that, even if she were able to show she engaged in protected activity, Bennett fails to establish a causal connection exists between the protected activity and her termination. In response, In response, Bennett contends that she has set forth evidence to support a retaliation claim, particularly that there is a question of fact as to whether Wilson Senior Care acted in retaliation by terminating her from her employment.

Title VII prohibits an employer from retaliation against an employee for participating in a Title VII proceeding or opposing an employer's discriminatory practices. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019). To establish a prima facie claim of retaliation, a plaintiff must show: (1) that she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) there is a causal connection between the protected activity and the adverse action. *Id.*[6] To establish the necessary causation for a retaliation claim, the employer must have engaged in the adverse action because the plaintiff engaged in the protected activity. *Id.* (citing *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998)). "Protected activity" falls into two categories: opposition and participation. *EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). The opposition clause protects employees who oppose practices by engaging in activities such as informal protests, voicing one's own opinion to bring attention to an employer's discriminatory practices, and complaining about suspected violations. *Id.*

In her brief, Bennett indicates that she was terminated based on her belief that Tyler Lofe told the CEO she was not performing satisfactorily. Later in her brief, she identifies the complaints to both Tyler Lofe directly, as well as her complaints to Lula Wallace, the Payroll and Benefits Coordinator, specifically that she believed Tyler Lofe was subjecting her to unequal scrutiny, as the reason for her termination. In her discovery responses, Bennett explained that her retaliation claim is based upon her discussions with both Lula Wallace and Tyler Lofe about Tyler Lofe's

---

[6] This case notes that *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61-68 (2006) redefines the second element to be a "materially adverse action."

oppositional behavior toward her. Within her deposition, Bennett stated that she spoke to Lula Wallace in Human Resources approximately one month and six weeks into her employment about what she perceived to be harassment based on her sexual orientation. [ECF No. 30-15, Bennett Dep. 62-63]. She stated at her deposition that she told Lula Wallace she felt like she had a bullseye on her. [ECF No. 30-15, Bennett Dep. 147:19-23]. She further stated that she spoke to Tyler Lofe about the fact that he seemed to have become withdrawn toward her and that there she perceived tension between the two of them. [ECF No. 30-15, Bennett Dep. 145:10-22]. These complaints are the basis upon which Bennett establishes she engaged in protected actvity.

These conversations are all related to Bennett's perception that there is opposition toward her sexual orientation, rather than a complaint that she was being treated differently because she was a female while employed with Wilson Senio Care. Bennett does not allege that she complained of discriminatory practices which were based on what she perceived to be sex discrimination. Nonetheless, assuming she engaged in protected activity by complaining about perceived discrimination, she has not come forward with sufficient evidence to establish a causal connection between these complaints and her termination. Bennett has not come forward with sufficient evidence to show that the decisionmaker, Dennis Lofe, was aware of the conversations with Lula Wallace and Tyler Lofe, or that even if were aware of the conversations, that they factored into his decision to terminate her employment. Dennis Lofe's testimony was that he made the decision alone to terminate Bennett. Bennett states that while Tyler Lofe and Lula Wallace were in the room at the time of her termination, they remained silent. Bennett does not allege that Dennis Lofe terminated her upon learning she was engaging in protected activity. But even were

18

this Court to find that Bennett made a prima facie case of retaliation, Wilson Senior Care has brought forth sufficient evidence to support a finding that Bennett's termination was based upon deficient performance in the workplace, as explained previously in this Order.

By contrast, Bennett has not established that this explanation is pretextual. Within her objections, Bennett alleges that the fact that she was not covered by any of her employer's benefits suggests that her separation was contemplated prior to termination. First, Bennett does not set forth any facts or evidence to suggest that the timing of her benefits establishes pretext. Whether her employer contemplated terminating her position for an extended period of time does not suffice to establish a causal connection on these set of facts. Second, her subjective belief does not establish pretext or otherwise show that her termination was a result of either discrimination based on sex or retaliation. *See Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (stating that an employee's own naked opinion, without anything more, is not enough to establish a prima facie case of discrimination). Moreover, assertions that someone's state of mind and motivation are in dispute is not enough to withstand summary judgment. *Id.* Nor has Bennett established that the decisionmaker in this case knew that she had made complaints to any other employees. Therefore, even assuming Bennett engaged in protected activity, she has failed to establish a causal connection between the protected activity and her termination. Nor has she brought forth sufficient evidence to rebut Wilson Senior Care's explanation for her termination or otherwise establish pretext. Accordingly, Plaintiff is unable to succeed on a retaliation claim and summary judgment is appropriate as to this claim, as well.

## **Conclusion**

The Court has thoroughly reviewed the entire record, including all pleadings and exhibits filed in this case. For the reasons stated above, this Court **ADOPTS** the Magistrate Judge's Report & Recommendation [ECF #41]. Defendant's Motion for Summary Judgment [ECF #30] is **GRANTED**. The Motion for Discovery [ECF #29] as well as the Joint Motion to Stay all Pending Deadlines [ECF #35] is **MOOT**.

**IT IS SO ORDERED.**
Florence, South Carolina
February 11, 2020

s/ R. Bryan Harwell
R. Bryan Harwell
United States Chief District Judge